# STATE OF MICHIGAN

# COURT OF APPEALS

RIVER ROUGE SCHOOL DISTRICT,

Respondent-Appellee,

v

RIVER ROUGE EDUCATION ASSOCIATION,

Charging Party-Appellant.

UNPUBLISHED
September 1, 2016

No. 326925
MERC
LC No. 09-000202

Before: OWENS, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Charging party River Rouge Education Association (the Association) appeals by right the order of the Michigan Employment Relations Commission (MERC) dismissing the Association's unfair labor practice charge brought against respondent River Rouge School District (the District). We affirm.

The Association is the bargaining representative for all certified teachers employed by the District. This case concerns whether the District repudiated the collective bargaining agreement (CBA) between the Association and the River Rouge Board of Education by employing non-member substitute teachers before recalling two laid-off member teachers to those positions.

One of the teachers, Beverly Franklin, was laid off in June 2009 due to the District's economic condition. The 2009-2010 school year began on September 1, 2009, and the second semester began on January 25, 2010. Franklin was recalled as a "Computer/Business" teacher to River Rouge High School on September 24, 2009. Her salary was prorated accordingly. Franklin testified at a March 7, 2014 hearing that a substitute teacher previously taught the classes she was recalled to teach. The hearing referee found Franklin's testimony credible and unrefuted.

The other teacher, Terry Loveday, was laid off in June 2007 and recalled as a physical education teacher at Ann Visger Elementary School on January 4, 2010. He testified that before being recalled, "[o]ne of my friends at the school district informed me that there was a substitute in the physical education position." Loveday indicated that he relayed that information to a union representative and subsequently received a call in December 2009 from the District's superintendent informing him that he would be recalled. Tammy Hubbard, the principal of Ann Visger Elementary School, explained that physical education was not offered when the 2009-2010 school year began partly because the school needed to assess its enrollment numbers before

-1-

deciding how many "specials" to offer. Hubbard said that "gym" was offered about a month into the school year and was taught by a substitute teacher before Loveday returned. Hubbard indicated that all decisions regarding how the class would be staffed came from the District's superintendent.

In its unfair labor practice claim, the Association asserted, and the District largely agreed, that multiple laid-off teachers had been recalled in September 2009. The Association maintained that despite the September recalls "there remained teaching assignments that were still staffed by permanent substitutes." The Association argued that by failing to offer those positions to laid-off teachers, the District unilaterally modified or repudiated the CBA's procedures for making layoffs and filling vacancies. The District admitted that it employed substitute teachers, but asserted that it did so in compliance with the CBA.[1]

Following a hearing, the hearing referee found "no basis in this record to find Respondent guilty of repudiating the provisions in its contract dealing with recall and the filling of vacancies." The referee reasoned that even if respondent breached the contract by its delay in recalling Franklin and Loveday, these were isolated instances of contract breach "that did not significantly impact the bargaining unit." The referee recommended dismissal of the charge. The Association filed exceptions, which MERC found unavailing. MERC dismissed the Association's charge, and this appeal followed.

MERC's factual findings are conclusive when they are "supported by competent, material, and substantial evidence on the record considered as a whole . . . ." MCL 423.216(e); see also Const 1963, art 6 § 28.[2] "This evidentiary standard is equal to the amount of evidence that a reasonable mind would accept as sufficient to support a conclusion. While it consists of more than a scintilla of evidence, it may be substantially less than a preponderance." *Mount Pleasant Pub Sch v Mich AFSCME Council 25*, 302 Mich App 600, 615; 840 NW2d 750 (2013) (internal quotations marks and citation omitted). Review of MERC's "factual findings . . . must

---

[1] The Association filed an amended charge approximately four months later, which provided allegations relating to member Lisa LaForest. Claims related to LaForest were settled at conference.

[2] Const 1963, art 6, § 28 provides in part:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. . . .

be undertaken with sensitivity, and due deference must be accorded to administrative expertise." *Gogebic Community College Mich Ed Support Personnel Ass'n v Gogebic Community College*, 246 Mich App 342, 348-349; 632 NW2d 517 (2001) (citation omitted).

"MERC's legal determinations may not be disturbed unless they violate a constitutional or statutory provision or they are based on a substantial and material error of law." *Oak Park Pub Safety Officers Ass'n v City of Oak Park*, 277 Mich App 317, 324; 745 NW2d 527 (2007). However, "review of legal questions remains de novo, even in MERC cases." *Van Buren Co Ed Ass'n and Decatur Ed Support Personnel Ass'n, MEA/NEA v Decatur Pub Sch*, 309 Mich App 630, 639; 872 NW2d 710 (2015) (internal quotation marks and citation omitted).

Public labor relations in Michigan are governed by the Michigan Public Employment Relations Act (PERA), MCL 423.201 *et seq. Detroit Fire Fighters Ass'n, IAFF Local 344 v City of Detroit*, 482 Mich 18, 28; 753 NW2d 579 (2008). Pursuant to § 10(1)(e) of PERA, a public employer may not "[r]efuse to bargain collectively with the representatives of its public employees . . . ." MCL 423.210(1). In order to bargain collectively, the parties must meet and "confer in good faith with respect to wages, hours, and other terms and conditions of employment," MCL 423.215(1), which are known as the mandatory subjects of collective bargaining, *Oak Park Pub Safety Officers Ass'n*, 277 Mich App at 325. "Permissive subjects are those which are not mandatory, but about which the parties may bargain." *Detroit Police Officers Ass'n v City of Detroit*, 428 Mich 79, 91 n 6; 404 NW2d 595 (1987). "Once agreement is reached, the terms of the written bargaining agreement are preserved and neither management, nor labor, may unilaterally modify the agreement without the consent of the other party." *St Clair Intermediate Sch Dist v Intermediate Ed Ass'n/Mich Ed Ass'n*, 458 Mich 540, 566-567; 581 NW2d 707 (1998) (citations omitted).

"The MERC ordinarily does not involve itself with contract interpretation when the agreement provides a grievance process that culminates in arbitration." *Macomb Co v AFSCME Council 25*, 494 Mich 65, 80; 833 NW2d 225 (2013) (internal quotation marks and citation omitted). However, MERC has long held that it will find an unfair labor practice when an employer's unilateral modification of a CBA amounts to repudiation of the CBA. See, e.g., *Plymouth-Canton Community Sch Bd of Ed v Plymouth-Canton Ass'n of Ed Office Personnel*, 1984 Lab Op 894. When a party repudiates a CBA, it violates its duty to bargain in good faith. *Maud Preston Palenske Mem Library v AFSCME Council 25, Local 2757.09 and Local 2757.10*, MERC Decision & Order (Case No. C12 K-223), issued April 10, 2014.

"Repudiation exists when 1) the contract breach is substantial, and has a significant impact on the bargaining unit and 2) no bona fide dispute over interpretation of the contract is involved." *Gibraltar Sch Dist v Gibraltar Custodial-Maintenance Ass'n/MEA*, MERC Decision & Order (Case No. CU01 I-052), issued June 30, 2003. "The Commission has defined repudiation as an attempt to rewrite the contract, a refusal to acknowledge its existence, or a complete disregard for the contract as written." *City of Detroit (Dep't of Transp) v Amalgamated Transit Union, Local 26*, MERC Decision & Order (Case No. C04 B-061), issued April 25, 2006. MERC "has repeatedly held that there is no breach of the duty to bargain under § 10(1)(e) of PERA when the parties have a good faith dispute over contract interpretation." *Wayne Co v Mich AFSCME Council 25, AFL-CIO*, MERC Decision & Order (Case No. C10 J-266), issued May 19, 2015. See also *Saunders v City of Dearborn*, 107 Mich App 499, 506; 309 NW2d 641

(1981) (noting that MERC "has held that when the action involves a good-faith dispute as to contract interpretation, it will not assert jurisdiction").

The Association argues that MERC erred in not finding repudiation because the District repudiated Articles 7 and 8 of the CBA, the provisions governing recalls and assignments for vacancies. We disagree because we find no error in MERC's adoption of the ALJ's reasoning that even if respondent breached the contract by its delay in recalling Franklin and Loveday, these were isolated instances of contract breach "that did not significantly impact the bargaining unit." The Association essentially argues that, when considering the effect of the District's actions on the bargaining unit, other teachers covered by a previous settlement regarding recall should also be considered. Yet, even though the Association did not make this specific argument to MERC, MERC noted that the Association "did not produce evidence that any other teachers were denied timely recall, nor was there evidence that [the District] refused to recognize its contractual duty to recall laid off teachers." Indeed, the Association does not cite the record for support of its assertion that "nearly half of the bargaining unit members were laid off and not recalled in a timely manner." Considering that the evidence only pertained to two of the unit's members, MERC's finding that any breach of the CBA did not significantly impact the bargaining unit was "supported by competent, material, and substantial evidence." MCL 423.216(e).

Because the District's actions were not a repudiation of the CBA, there was no unfair labor practice. As such, MERC did not err by not awarding Franklin and Loveday back pay. See MCL 423.216(b) (MERC may only award back pay if it determines that the respondent committed an unfair labor practice).

Affirmed.


/s/ Donald S. Owens
/s/ David H. Sawyer
/s/ Douglas B. Shapiro