MICHIGAN COUNCIL 25, AMERICAN FEDERATION OF STATE,
COUNTY & MUNICIPAL EMPLOYEES, AFL-CIO v ST CLAIR
COUNTY

Docket No. 70006. Submitted February 8, 1984, at Detroit.—Decided
August 20, 1984. Leave to appeal applied for.

St. Clair County appeals from a decision and order of the Michi-
gan Employment Relations Commission (MERC) in which
MERC determined that the county had violated a section of the
public employees relations act (PERA) which makes it unlawful
for an employer to refuse to bargain collectively with the
representatives of its public employees. The MERC action
resulted from a grievance filed on January 8, 1981, by Michi-
gan Council 25, AFSCME, AFL-CIO, on behalf of former St.
Clair County Assistant Prosecuting Attorney Sharon Mormon
Parrish against St. Clair County Prosecuting Attorney Robert
Cleland in which it was alleged that Prosecutor Cleland had
terminated Assistant Prosecutor Parrish from her employment
on January 1, 1981, without just cause. In her February 23,
1981, demand for arbitration, Parrish claimed that she was
entitled to arbitration under a collective-bargaining agreement
covering the period from January 1, 1978, to December 31,
1980, which agreement was extended on a day-to-day basis from
December 31, 1980, until a new collective-bargaining agreement
was ratified on March 12, 1981, covering 1981-1982. Following
the demand for arbitration, Prosecutor Cleland and the county
filed suit in the St. Clair Circuit Court requesting a permanent
injunction to restrain the use of arbitration and seeking a
declaratory judgment regarding Parrish's employment status.
On November 5, 1981, the trial court, Martin E. Clements, J.,
rendered an opinion recognizing that the question before the
court was one of arbitrability. After deciding that on its face
there is no question as to the applicability of the contract        ·

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 5] 48A Am Jur 2d, Labor and Labor Relations § 1770.
Bargainable or negotiable issues in state public employment labor
relations. 84 ALR3d 242.

[2] 53 Am Jur 2d, Master and Servant § 2.

[3] 63A Am Jur 2d, Prosecuting Attorneys § 9.

provisions regarding arbitration to assistant prosecutors, the court determined that Prosecutor Cleland could legally reserve unto himself the right under state statute to discharge assistant prosecutors at will, whether or not any provisions to the contrary were contained in the collective-bargaining agreement. The court also held that because the prosecutor did not negotiate with the bargaining agent and did not consent to the contract provisions regarding employee tenure, the arbitration provisions of the collective-bargaining agreement did not bind the prosecutor. Accordingly, the trial court ruled that neither the union nor the assistant prosecutor was entitled to arbitration. On December 14, 1981, an order was entered enjoining all arbitration proceedings concerning the termination or discharge of Parrish from her employment. The assistant prosecutor and the union appealed to the Court of Appeals, which reversed in an unpublished per curiam opinion released on June 29, 1983, Docket No. 61665, entitled *Cleland v American Federation of State, County & Municipal Employees, AFL-CIO.* The Court of Appeals noted that the dispute was over whether the discharge was improper and that the contractual provision outlining a specific grievance procedure, leading to binding arbitration, should have been followed. The Court of Appeals determined that the circuit court was without jurisdiction to rule on the merits of the parties' dispute. The Court of Appeals held that whether the prosecutor relinquished, waived, or otherwise lost his statutory authority to fire at will as a result of the bargaining process and agreement is a proper question for arbitration. Subsequent to the circuit court's judgment, but prior to the Court of Appeals reversal of that judgment, a hearing referee filed a decision and recommended order in regard to the demand for arbitration and allegation of unfair labor practice filed by the union and Parrish. The hearing referee did not accept the determination of the circuit judge, but largely acted in disregard of and as though he were not bound by the circuit judge's ruling. On February 23, 1983, before the Court of Appeals reversed the circuit court's judgment, MERC issued its decision and order, largely affirming the decision and recommended order of the hearing referee. MERC held: (1) the circuit court's judgment was not res judicata with respect to the union's charges before MERC, (2) the interpretation of the prosecutor's removal statute made in the circuit court's judgment was not binding on MERC, (3) MERC does not purport to decide whether the grievance of Assistant Prosecutor Parrish is arbitrable, (4) the county and the prosecutor must recognize and comply with both collective-bargaining

agreements (one retroactive to January 1, 1981, and the other, by its terms, expired December 31, 1980), a provision of each being arbitration of grievances (thus, requiring arbitration of the assistant prosecutor's grievance), (5) the prosecutor is not a joint employer with the county, (6) the alleged failure of Prosecutor Cleland to give more timely notice of his intention to keep the prosecutor removal statute as a working part of any collective-bargaining agreement affirmatively subverted good-faith bargaining, and (7) the county violated § 10(1)(e) of PERA. St. Clair County appeals from the decision and order of MERC. *Held:*

1. The circuit court judgment was not res judicata and binding on MERC and the hearing referee.

2. The county prosecuting attorney is a co-employer of the assistant prosecuting attorney. MERC was in error in holding otherwise. The delegation of the power to hire and fire the employees in his office establishes the prosecutor as a co-employer with the county. Therefore, MERC erred in failing to rule that both the county and Prosecutor Cleland were required to engage in collective bargaining with the union. However, it does not necessarily follow that MERC also erred in determining that Prosecutor Cleland gave up his statutory right to hire and fire at will by failing to actively participate in the collective bargaining with the union. Even though Prosecutor Cleland did not actively engage in the negotiations with the union that occurred after he took office and that led to the collective-bargaining agreement, he did join the county in the circuit court action attempting to establish his right to hire and fire under the statute. In light of the notification given to the union that the prosecutor intended to retain in the collective-bargaining agreement his statutory right to discharge the assistant prosecuting attorneys, Prosecutor Deegan (Prosecutor Cleland's predecessor) cannot be said to have acquiesced in the the discharge provisions of the collective-bargaining agreement.

3. The assistant prosecuting attorneys joined the union bargaining unit after the 1978-1980 contract was already in effect. Under Court of Appeals precedent, the "just cause" provision of the 1978-1980 contract did not automatically apply to the assistant prosecuting attorneys. Therefore, Prosecutor Deegan did not act to waive his statutory rights in regard to the assistant prosecuting attorneys by failing to bargain collectively at the time that the 1978-1980 agreement was adopted. However, by its terms, that contract had expired at the time that Sharon Parrish was discharged by the newly elected Prosecutor Cleland. Although the 1981-1982 contract was not ratified until

after she was discharged, the contract ,was deemed to apply retroactively so that it was in effect as of January 1, 1981. Since the 1981-1982 contract was effective on January 1, 1981, the date Parrish was discharged, Prosecutor Deegan's reservation of rights under the 1978-1980 contract is irrelevant. Consequently, the Court of Appeals declined to find that MERC erred in holding that Prosecutor Cleland waived his right to hire and fire at will in the agreement reached in 1981.

4. The Court of Appeals did not believe that the evidence could be said to support a finding that the county did not engage in bargaining with an open mind and a sincere desire to reach a binding agreement. There is no evidence to support the hearing referee's conclusion that the actions of the county and the prosecutor approached a conspiracy to subvert the good-faith bargaining requirement of §§ 10(1)(e) and 11 of PERA. MERC was not at liberty to disregard the circuit court's judgment. There is no basis for the conclusion that the county, by instituting the circuit court action, intended to subvert the provisions of the collective-bargaining agreement. Therefore, MERC erred in finding that the county engaged in unfair labor practices by attempting to resolve these issues within the jurisdiction of the circuit court. Further, it was error for MERC to conclude that the county had refused to bargain. Those findings are reversed.

5. The conclusion that Sharon Parrish is entitled to arbitration of her grievance based upon her claim that there was no just cause for her discharge was not altered.

Affirmed in part and reversed in part.

1. LABOR RELATIONS — PUBLIC EMPLOYEES — COLLECTIVE BARGAINING.

The public employees relations act makes it unlawful for a public employer or agent of the employer to refuse to bargain collectively with the representatives of its public employees; a good-faith effort by all parties is required by the act (MCL 423.210[1][e]; MSA 17.455[10][1][e]).

2. LABOR RELATIONS — MASTER AND SERVANT — EMPLOYERS.

The general characteristics identifying employers are: (1) that they select and engage the employee, (2) that they pay the wages, (3) that they have the power of dismissal, and (4) that they have the power and control over the employee's conduct.

3. LABOR RELATIONS — PUBLIC EMPLOYERS — PUBLIC EMPLOYEES — PROSECUTING ATTORNEYS.

A county prosecuting attorney is authorized and empowered to

appoint assistant prosecuting attorneys subject to the consent of the circuit court; the county prosecuting attorney is authorized to dismiss assistant prosecuting attorneys at will; the delegation of the power to hire and fire the assistant prosecuting attorneys in his office establishes the prosecuting attorney as a co-employer with the county (MCL 49.41, 49.42; MSA 5.801, 5.802).

4. LABOR RELATIONS — PUBLIC EMPLOYEES — CONFLICT OF LAWS.
   A statutory right provided to an elected official to remove and appoint persons in his office is subject to the collective-bargaining provisions of the public employees relations act (MCL 423.201 et seq.; MSA 17.455[1] et seq.).

5. LABOR RELATIONS — COLLECTIVE-BARGAINING AGREEMENTS — NEWLY REPRESENTED EMPLOYEES.
   The terms of an existing collective-bargaining agreement do not automatically apply to newly represented employees who do not perform the same duties as the employees who previously comprised the bargaining unit; however, when the existing agreement expires the employer is required to bargain for a single contract to cover the entire bargaining unit.

*Boyle O'Connor,* for charging party.

*Touma, Watson, Nicholson, Whaling, Fletcher & DeGrow* (by *Gary A. Fletcher),* for respondent.

Before: BEASLEY, P.J., and GRIBBS and J. R. ERNST,* JJ.

PER CURIAM. St. Clair County appeals as of right from a decision and order of the Michigan Employment Relations Commission (MERC) dated February 23, 1983.

In approving the recommendation of the hearing referee, MERC specifically determined that the county had violated § 10(1)(e) of the public employees relations act (PERA), MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.,* which makes it unlawful for

* Circuit judge, sitting on the Court of Appeals by assignment.

an employer "to refuse to bargain collectively with the representatives of its public employees".

The facts in this case are largely uncontroverted. On July 27, 1976, Michigan Council 25, AFSCME, AFL-CIO (hereinafter the union), was certified in MERC Case No. R 76E-282 as the exclusive representative of the general county bargaining unit, including professional and technical employees.

On April 28, 1977, the assistant prosecuting attorneys in St. Clair County wrote a letter to the union representative indicating that they were not "includable among your county workers because, among other things, we have duties and responsibilities of a different nature from those of other county employees". Accordingly, the assistant prosecuting attorneys requested to be excluded from union representation.

A similar letter was sent to the county administrator, advising him that these attorneys did not desire to be represented by the union and that the union had no authority to negotiate on their behalf. On May 19, 1977, a follow-up letter was sent to the union by the assistant prosecuting attorneys, noting that they had not received any response to their previous letter and requesting that the union take whatever steps were necessary to ensure that they would no longer be considered a part of the union bargaining unit.

On October 3, 1977, the union was again certified as the general county bargaining unit under MERC Case No. R 778-390, including professional and technical employees and not excluding assistant prosecuting attorneys. Included in the list of eligible voters prepared by the county for the 1977 union election were the names of the assistant prosecuting attorneys. Pursuant to the 1977 certifi-

cation, a collective-bargaining agreement covering the period from January 1, 1978, to December 31, 1980, was negotiated between the union and the county.

On January 3, 1978, the assistant prosecuting attorneys and clerical personnel of the prosecuting attorneys' office filed a petition for election with MERC requesting that the union be decertified as to them. On May 4, 1978, a letter was written to the county personnel officer and to the union representatives notifying them that the assistant prosecuting attorneys were not and would not be part of the union bargaining unit. In addition, the letter indicated that they intended to contest unionization by filing suit for ex parte injunctive relief in the circuit court.

On May 16, 1978, the assistant prosecuting attorneys, clerical staff, and office investigator filed suit against the county, the county commissioners, the county administrator, and the union. The complaint reiterated the previous claim that the assistant prosecutors did not wish to be represented by the union and that each of them was an employee of the then county prosecutor, Peter E. Deegan, serving at his pleasure.

Based upon the allegations in this complaint, then Circuit Court Judge Halford Streeter granted the plaintiffs' motion for a preliminary injunction and temporary restraining order to prevent the collection of union dues or service fees from the named plaintiffs. The injunction effectively excluded the assistant prosecuting attorneys from the bargaining unit since, as the union representative testified, in order to be a member in good standing of the union, it was necessary to be a dues-paying member.

In August of 1978, the assistant prosecuting

attorneys reversed direction, decided to become part of the union bargaining unit and filed a grievance, claiming that they were covered by and entitled to wage increases under the 1978-1980 collective-bargaining agreement between the union and the county.

The county personnel officer, Terry Pettee, sent a letter to the union representative advising that the county would remain neutral in regard to the assistant prosecuting attorneys' grievance. The county offered to provide full retroactive pay to the named employees, should it be determined that they were members of the bargaining unit, but only if the attorneys withdrew "the matter from further litigation". The assistant prosecuting attorneys accepted the county's offer and voluntarily dismissed the circuit court action.

On June 11, 1979, the county sent a letter to the union acknowledging that the assistant prosecuting attorneys were now a part of the union bargaining unit. The letter, however, indicated that there were some areas of the collective-bargaining agreement which had questionable application to the assistant prosecutors because of their professional status. Specifically, the letter noted that the discharge provisions were inapplicable because of the statute providing that assistant prosecutors serve at the pleasure of the county prosecuting attorney. According to the union representative, the position taken in this letter was never disputed or responded to by the union. Similarly, the county never proposed amending the contract to include special language regarding the assistant prosecuting attorneys.

On August 13, 1980, prior to expiration of the 1978-1980 collective-bargaining agreement, a memorandum was sent to department heads informing

them that the bargaining agreement would expire at the end of 1980 and that a meeting had been scheduled so that the department heads could express their concerns regarding negotiations for a new agreement. In response, Prosecutor Deegan sent a letter to the personnel office indicating that he intended to take an active part in the negotiations which affected the employees of his office. The prosecutor also sent a letter to the local union representative in which he again announced his intention to take an active part in the upcoming negotiations. He, however, stated that he was not bound by the then-current collective-bargaining agreement because he "took no part in its formation, negotiation or execution".

On December 31, 1980, a new collective-bargaining agreement had not been reached, so an agreement was made extending the formal union contract on a day-to-day basis. Robert Cleland took office as St. Clair County Prosecuting Attorney on January 1, 1981, when the contract day-to-day extension was in effect. On February 12, 1981, Cleland wrote to the county administrator, advising that no one had the authority to negotiate on his behalf and that, as prosecuting attorney, he intended to retain all of his statutory prerogatives. Nevertheless, he provided that he did not have any objection to negotiations being undertaken in his behalf with respect to wage scales and other financial matters. At the county's request, he did not, however, assert his right to exercise his statutory powers as prosecutor until the negotiations on the new bargaining agreement were concluded. In accordance with the county's request, the prosecutor waited until a tentative agreement had been reached between the county and the union before advising the union of his objections to the county's

negotiations on his behalf as to nonfinancial matters.

In a letter dated March 11, 1981, he informed the union that "[t]he county administration does not now have, nor has it ever had, permission or authority from me, or my predecessor, to negotiate or bargain or agree upon any issue, with the employees of my office, which touches upon the hiring, discipline, discharge, or conditions of work of my office". The letter further provided that he did not object to financial matters "being resolved by the collective-bargaining undertaken by the county". The 1981-1982 collective-bargaining agreement was ratified on March 12, 1981. The union does not admit receiving the prosecutor's letter until sometime after that date.

On January 8, 1981, Assistant Prosecuting Attorney Sharon Mormon Parrish filed a grievance against Prosecutor Cleland for having terminated her employment on January 1, 1981, without just cause. In her February 23, 1981, demand for arbitration, she claimed that she was entitled to arbitration under the 1980 collective-bargaining agreement. Following her demand for arbitration, Prosecutor Cleland and the county filed suit in the St. Clair County Circuit Court requesting a permanent injunction to restrain the use of arbitration by Assistant Prosecutor Parrish and the union. In that case, plaintiffs also sought a declaratory judgment regarding the employment status of Assistant Prosecutor Parrish.

On November 5, 1981, visiting Circuit Court Judge Martin E. Clements rendered an opinion recognizing that the question before the court was one of arbitrability. He noted that whether a dispute is arbitrable is a question for the court, but that the inquiry was confined to ascertaining

whether the parties seeking arbitration are making a claim which, on its face, is governed by the contract. After deciding that, on its face, there is no question as to the applicability of the contract provisions regarding arbitration to assistant prosecutors, he determined that Prosecutor Cleland could legally reserve unto himself the right under the statute to discharge assistant prosecutors at will, whether or not any provisions to the contrary were contained in the collective-bargaining agreement.

The trial court further held that because the prosecutor did not negotiate with the bargaining agent and did not consent to the contract provisions regarding employee tenure, the arbitration provisions of the collective-bargaining agreement did not bind the prosecutor. Accordingly, the trial court ruled that neither the union nor the assistant prosecutor, Sharon Parrish, was entitled to arbitration. On December 14, 1981, an order was entered enjoining "all arbitration proceedings concerning the termination or discharge of Sharon Mormon Parrish from her employment".

The judgment of the trial court was reversed by this Court in *Cleland v American Federation of State, County & Municipal Employees, AFL-CIO,* an unpublished per curiam opinion released June 29, 1983, Docket No. 61665. We held that:

"When the parties to a collective bargaining agreement have agreed to submit questions on the document's interpretation to arbitration, a court's initial review is merely for the purpose of determining whether the party seeking arbitration is making a claim which on its face is governed by the agreement.
* * *

"The union claimed in this case that the county and the prosecuting attorney had violated a specific provi-

sion of the contract in terminating an assistant prose-cutor's employment without just cause. The county took the position that it had not violated that clause because the prosecuting attorney intended to retain his statu-tory power to fire at will and without just cause not-withstanding the collective bargaining agreement's just-cause provision. There was, therefore, a dispute over whether the discharge was 'improper', and the contrac-tual provision outlining a specific grievance procedure, leading to binding arbitration, should have been fol-lowed. * * * The circuit court was without jurisdiction to rule on the merits of the parties' dispute.

"We hold that whether the prosecutor relinquished, waived, or otherwise lost his statutory authority to fire at will as a result of the bargaining process and agree-ment is a proper question for arbitration." (Citations omitted.)

An application for leave to appeal from our decision reversing the trial court has been filed in the Supreme Court, which application has not been ruled upon as of this writing. Consequently, for purposes of this opinion, we treat our decision under Docket No. 61665 as being the law of this case.

In addition to the demand for arbitration filed under the 1980 collective-bargaining agreement, the union filed a charge against defendant county for an alleged unfair labor practice under § 10 of PERA.[1]

The original charge was filed on June 3, 1981, claiming that termination of Sharon Mormon Parrish's employment was a result of or in retalia-tion for her exercise of rights granted under PERA. She apparently believed that she had been fired because of an alleged active role on behalf of herself and fellow employees regarding various employment issues.

[1] MCL 423.210; MSA 17.455(10).

An amended charge was filed on September 1, 1981, claiming that in addition to the original charge the county had repudiated its negotiated collective-bargaining agreement with the union insofar as it related to employees in the prosecutor's office. Because the county allegedly refused to acknowledge the contract provisions regarding discipline, discharge, arbitration, and overtime pay, the union claimed that the county was in violation of § 10(1)(e) of PERA.[2]

On September 3, 1982, a hearing referee filed a decision and recommended order. It must be noted that at the time he filed his decision this Court had not yet reversed the circuit judge's judgment. The hearing referee did not accept the determination of the circuit judge, but largely acted in disregard of and as though he were not bound by the circuit judge's ruling. Whether or not he was correct on the merits in his disagreements with the circuit judge's conclusions, he seems to have missed the fact that the county and the prosecuting attorney were not in a position to make independent determinations of the merits of the circuit judge's judgment and to decide whether or not they would obey. Consequently, until June 29, 1983, when we reversed the circuit court, we believe that the county and the prosecuting attorney for St. Clair County were bound by and entitled to rely on the judgment of the circuit court.

On February 23, 1983, *before* this Court reversed the circuit court's judgment, MERC issued its decision and order, largely affirming the decision and recommended order of the hearing referee, albeit in a more temperate fashion than by the latter. MERC held:

---

[2] MCL 423.210(10(e); MSA 17.455(10)(1)(e), which reads: "to refuse to bargain collectively with the representatives of its public employes, subject to the provisions of section 11."

1. The circuit court's judgment was not res judicata with respect to the union's charges before MERC.

2. The interpretation of the prosecutor's removal statute made in the circuit court's judgment was not binding on MERC.

3. MERC does not purport to decide whether the grievance of the assistant prosecutor, Sharon Parrish, is arbitrable.

4. The county and the prosecutor must recognize and comply with both collective-bargaining agreements (one retroactive to January 1, 1981, and the other which, by its terms, expired December 31, 1980), a provision of each being arbitration of grievances (thus, requiring arbitration of the assistant prosecutor's grievance).

5. The prosecutor is not a joint employer with the county.

6. The alleged failure of Prosecutor Cleland to give more timly notice of his intention to keep the prosecutor removal statute as a working part of any collective-bargaining agreement "affirmatively subverted good faith bargaining".

7. The county violated § 10(1)(e) of PERA.

On appeal, appellant, St. Clair County, raises four issues. We note that appellant's brief was filed before the other panel of this Court reversed the judgment of the circuit court.

First, appellant claims that MERC should have applied the doctrine of res judicata based upon the circuit court's decision on the issue of whether there was an enforceable agreement to arbitrate. The so-called res judicata issue is rendered moot by our reversal of the circuit court's decision. However, to say that the circuit court's judgment was not res judicata is not to say that either MERC, the hearing referee, the union, the prose-

cutor, or the county was at liberty to totally disregard it prior to the time when it was reversed.

Sharon Parrish was discharged as an assistant prosecuting attorney on January 1, 1981, by the then newly elected prosecutor, Robert Cleland, under the statute which provided that assistant prosecuting attorneys hold their offices "during the pleasure of the prosecuting attorney".[3]

The collective-bargaining agreement between the union and the county subsequently entered into, but made retroactive to January 1, 1981, provided that the county had the right to "discharge for just cause" and that such right was subject only to the provisions of the collective-bargaining agreement. The agreement permitted discharged employees to follow specific grievance procedures which ultimately led to binding arbitration. The union filed a grievance as a result of the discharge of Sharon Parrish and requested binding arbitration of the dispute pursuant to the terms of the binding arbitration agreement.

In reversing, we said that:

"Although public employers are under a statutory duty to bargain in good faith with public employees over discharge rights and grievance procedures, the employers may resist any proposed changes during negotiations."

In the March, 1981, collective-bargaining agreement, there is not any provision excluding assistant prosecuting attorneys nor does the prosecuting attorney retain the power to discharge assistant prosecuting attorneys at will. However, we also did indicate that there is not any reference to

[3] MCL 49.42; MSA 5.802.

a "posited inapplicability of MCL 49.42; MSA 5.802".

We then went on to hold that there was a bona fide dispute over whether the discharge was "improper" and that the collective-bargaining agreement outlined a specific grievance procedure leading to binding arbitration which should have been followed. For these reasons, the circuit court judgment was not res judicata and binding on MERC and the hearing referee.

Second, the county maintains that the county prosecutor is a co-employer of the assistant prosecuting attorneys. We agree and find that MERC was in error in holding otherwise. In *Wayne County Civil Service Comm v Wayne County Board of Supervisors,*[4] we defined the general characteristics of an employer as being:

"(1) that they select and engage the employee; (2) that they pay the wages; (3) that they have the power of dismissal; (4) that they have the power and control over the employee's conduct."

MCL 49.41; MSA 5.801 authorizes the county prosecutor to select assistant prosecutors subject to the consent of the circuit court:

"The prosecuting attorney of any county is hereby authorized and empowered to appoint an assistant prosecuting attorney, by and with the consent of the circuit judge of the judicial circuit in which such county may

---

[4] 22 Mich App 287, 294; 177 NW2d 449 (1970), *rev'd in part* 384 Mich 363; 184 NW2d 201 (1971). The Supreme Court held that PERA and the county civil service act could not be harmonized and that the civil service commission has no lawful part in the administration of PERA. The court specifically did not determine the status of any divisions of county employers other than affirming this Court's ruling that the county road commission alone was the "public employer" of its employees.

be situated, which appointment shall be in writing and filed with the clerk of his county."

Moreover, MCL 49.42; MSA 5.802 authorizes the county prosecutor to dismiss assistant prosecuting attorneys:

"Any such assistant prosecuting attorney shall hold his office during the pleasure of the prosecuting attorney appointing him, perform any and all duties pertaining to the office of prosecuting attorney at such time or times as he may be required so to do by the prosecuting attorney and during the absence or disability from any cause of the prosecuting attorney, but he shall be subject to all the legal disqualifications and disabilities of the prosecuting attorney, and shall before entering upon the duties of his office take and subscribe the oath of office prescribed by the constitution of this state and file the same with the county clerk of his county. The compensation of any such assistant prosecuting attorney shall be paid by the prosecuting attorney appointing him."

Accordingly, the prosecutor has at least two attributes specifically recognized by this Court as belonging to a public employer.

Additional precedent for determining that the county prosecutor and the county are co-employers under PERA may be found in cases dealing with the same issue in regard to the status of the county sheriff.[5]

---

[5] *Capitol City Lodge No 141, FOP v Meridian Twp,* 90 Mich App 533; 282 NW2d 383 (1979), *lv den* 408 Mich 856 (1980); *Local 1518, Council 55, AFSCME, AFL-CIO v St Clair County Sheriff,* 77 Mich App 145; 258 NW2d 168 (1977), *rev'd on other grounds* 407 Mich 1; 281 NW2d 313 (1979). In granting leave in *St Clair County Sheriff,* the Supreme Court specifically limited review of the case to two questions and, on the basis of these limited issues, reversed the Court of Appeals decision. This Court's opinion concluded that by enacting MCL 423.233; MSA 17.455(33), which provides for arbitration of public police and fire department labor disputes, the Legislature implicitly repealed MCL 51.70; MSA 5.863, empowering sheriffs to

In *Capitol City Lodge No 141, FOP v Meridian Twp*,[6] this Court ruled that a sheriff is not an "agent of a public employer", as used in PERA, but has a somewhat more independent status. The Court reasoned that the sheriff could not be found to be an agent of the township since the township had no authority to control the actions of the sheriff in regard to his statutory powers. Accordingly, the Court held that the sheriff's relationship to the township was that of an independent contractor and that the actions of the sheriff could not, therefore, be imputed to the township.

Similarly, in *Local 1518, Council 55, AFSCME, AFL-CIO v St Clair County Sheriff*,[7] this Court ruled that the county sheriff and county board of commissioners were co-employers under PERA. Specifically, the Court stated:

"While the board of commissioners may be the employer to the extent that it controls the economic factors involved in the employment contract, there is no question but that the sheriff is the employer who has control over the day to day operation of the sheriff's department. In at least one state, in a similar situation it has been held that the board of commissioners and the sheriff are dual employers for collective bargaining purposes. See *County of Ulster v CSEA Unit of Ulster County Sheriff's Dep't*, 37 App Div 2d 437; 326 NYS2d 706 (1971)."[8]

appoint and discharge their deputies. The Supreme Court held that the issue of whether the PERA provision concerning compulsory arbitration procedures for police and fire departments took prcedence need not have been considered because, as the Legislature's amendment of that statute in 1977 PA 303 made clear, the police and fire compulsory arbitration act does not apply to individual grievances. The Supreme Court did not review this Court's findings relative to the co-employer status of the county sheriff and county board of commissioners under PERA.

6 *Supra.*

7 *Supra.*

8 *St Clair County Sheriff, supra*, pp 149-150.

In the instant case, MERC incorrectly ruled that the county prosecutor and the county were not joint employers. MERC based its decision on the fact that the prosecutor could not be a *separate* employer under PERA. In coming to this conclusion, MERC did not consider the possibility that some of the attributes, rather than all the attributes, of an employer had been delegated to the prosecutor. Under the rulings in *St Clair County Sheriff* and *Capitol City Lodge, supra,* the delegation of the power to hire and fire the employees in his office establishes the prosecutor as a co-employer with the county. Therefore, MERC erred in failing to rule that both the county and the prosecutor (Cleland) were required to engage in collective bargaining with the union.

However, while we hold that MERC erred in failing to recognize that the county prosecutor was a co-employer, it does not necessarily follow that MERC also erred in determining that Prosecutor Cleland gave up his statutory right to hire and discharge at will by failing to actively participate in the collective bargaining with the union. The statutory right of an elected official to remove and appoint persons in his office is subject to the collective-bargaining provisions of PERA.[9]

In *Local 1383, International Ass'n of Fire Fighters v City of Warren,*[10] the provisions of the parties' collective-bargaining agreement adopted under PERA conflicted with the county civil service act. The Supreme Court held that the statutory powers and duties of public officials were "diminished *pro tanto*" by PERA so that PERA could be freely administered. In addition, the Supreme

[9] *Id.; Local 1383, International Ass'n of Fire Fighters v City of Warren,* 411 Mich 642; 311 NW2d 702 (1981).

[10] *Supra.*

Court said that the free administration of collective bargaining "can only be achieved when all subjects of bargaining are included in the collective-negotiation process".[11] Accordingly, in *City of Warren, supra,* the Supreme Court concluded that the collective-bargaining agreement negotiated and reached under PERA would govern as to seniority and promotions, even though the civil service commission had the power by statute to determine qualifications, through competitive examinations, for the promotion of fire department employees.

In the within case, there is a potential conflict between § 15 of PERA, which requires a public employer to bargain collectively and execute a written contract in regard to "wages, hours, and other terms and conditions of employment", and the prosecutor's right under MCL 49.41; MSA 5.801 and MCL 49.42; MSA 5.802 to hire and fire assistant prosecuting attorneys at will. Under § 15 of PERA, elements, procedures, and criteria involving evaluations for purposes of reappointment, retention, and promotion are "other terms and conditions of employment" and, hence, are mandatory subjects of collective bargaining.[12] Since the grounds on which an employee may be discharged is a term or condition of employment, it can be argued that it is a mandatory subject for collective bargaining under PERA. Based on this premise, MERC would require the county and/or the prosecutor to engage in negotiations on this issue, notwithstanding the statutory provisions that allow the prosecutor to hire and fire assistant prosecuting attorneys at will.

---

[11] *City of Warren, supra,* p 663.

[12] *National Union of Police Officers Local 502-M, AFL-CIO v Wayne County Bd of Comm'rs,* 93 Mich App 76; 286 NW2d 242 (1979).

Under the facts in *City of Warren, supra,* the collective-bargaining agreement providing that county employees could only be discharged for just cause was upheld to the extent that the parties had agreed to limit the statutory powers of the prosecutor. Unanswered is what happens if a prosecutor engages in collective bargaining and does *not* agree to traditional discharge and grievance provisions common in private employment.

In this case, even though Prosecutor Cleland did not actively engage in the negotiations with the union that occurred after he took office and that led to the collective-bargaining agreement, he did join with the county in a circuit court action attempting to establish his right to hire and fire under the statute.

In view of the ultimate result, namely, the reversal by this Court of the circuit court's judgment (assuming the Supreme Court does not alter the decision of this Court) in hindsight, it can be said that the procedure which he chose to follow was neither wise nor successful. However, we do not choose to penalize the prosecutor, because his choice of procedure proved unsuccessful, by permitting his reliance on the circuit court's judgment to be used as a basis for a finding by MERC of a PERA violation.

In light of the notification given to the union that the prosecutor intended to retain in the collective-bargaining agreement his statutory rights to discharge the assistant prosecuting attorneys, then Prosecutor Deegan cannot be said to have acquiesced in the discharge provisions of the collective-bargaining agreement.

In addition, we recently held that where an existing collective-bargaining agreement is applied to newly represented employees, the agreement's

terms do not automatically apply to employees who do not perform the same duties as the employees who previously comprised the bargaining unit.[13]

In *Howell Educational Secretaries Ass'n, MESPA v Howell Public Schools,*[14] this Court decided that to decline to apply a pre-existing collective-bargaining agreement to newly acreted employees does not deny them entrance into the bargaining unit which they elected to join; it merely requires the parties to bargain with respct to their agreement. This Court provided that when the pre-existing contract expired, the employer was required to bargain for a single contract to cover the entire bargaining unit.

In the within case, the assistant prosecuting attorneys joined the union bargaining unit after the 1978-1980 contract was already in effect. Under the *Howell* decision, the "just cause" provision of that contract did not automatically apply to the assistant prosecuting attorneys. Therefore, Prosecutor Deegan did not act to waive his statutory rights in regard to the assistant prosecuting attorneys by failing to bargain collectively at the time that the 1978-1980 agreement was adopted. However, by its terms, that contract had expired at the time that Sharon Parrish was discharged by the newly elected Prosecutor Cleland. Although the 1981-1982 contract was not ratified until after she was discharged, the contract was deemed to apply retroactively so that it was in effect as of January 1, 1981. Since the 1981-1982 contract was in effect on January 1, 1981, the date Sharon Parrish was discharged, Prosecutor Deegan's reservation of

---

[13] *Howell Educational Secretaries Ass'n, MESPA v Howell Public Schools,* 130 Mich App 546; 343 NW2d 616 (1983).

[14] *Id.*

rights under the previous contract is irrelevant. Consequently, we decline to find that MERC erred in holding that Prosecutor Cleland waived his right to hire and fire at will in the agreement reached in 1981.

MERC considered the question of whether the county engaged in bad-faith bargaining, even though bad-faith bargaining was not specifically charged by the union. The amended charge filed by the union alleged that the county had violated PERA by engaging in unfair labor practices within the meaning of § 10(1)(e) of the statute.

Section 10(1)(e) provides that it is unlawful for a public employer or agent of the employer to "refuse to bargain collectively with the representatives of its public employees". This provision has been interpreted by this Court as requiring a "good faith effort" by all parties.[15] However, while a bad-faith charge may have been brought by the union under the cited portions of the statute, the fact is that no such charge was made, namely, that the county had failed to bargain as mandated by the statute. Under these circumstances, we are reluctant to approve a finding that the county had engaged in unfair labor practices. This reluctance is particularly supported in this case where the county and the prosecuting attorney were confronted by conflicting judgments, the one by the circuit court and the other by the hearing referee. In view of that fact, we do not believe that the evidence can be said to support a finding that the county did not engage in bargaining with an open mind and a sincere desire to reach a binding agreement.

It is understandable that at a time when the

[15] *Lamphere School Dist v Lamphere Federation of Teachers,* 67 Mich App 485; 241 NW2d 257 (1976).

county was close to an agreement with the union that would cover all employees it would be reluctant to have the entire agreement torpedoed by a few assistant prosecutors whose prosecutor did not want to waive his statutory rights. The assistant prosecutors appear to have comprised a small and relatively unimportant part of the total unit negotiating a collective-bargaining agreement.

We find no evidence to support the conclusion of the hearing referee that the actions of the county and the prosecutor aproached a conspiracy to subvert the good-faith bargaining requirement of §§ 10(1)(e) and 11 of PERA. His finding indicates a manifest disregard for the judgment of the circuit court. Neither do we believe that MERC was at liberty to disregard the circuit court's judgment. We see no basis for the conclusion that the county, by instituting the circuit court action, intended to subvert the provisions of the collective-bargaining agreement. The union was entitled to seek summary dismissal of the circuit court action if it was ill-founded, procedurally incorrect and contrary to the statutes relating to governmental labor relations. In fact, if such a motion to dismiss were denied, the union could have sought an emergency appeal to this Court. But these efforts were not made.

Under these circumstances, we hold that MERC erred in finding that the county engaged in unfair labor practices by attempting to resolve these issues within the jurisdiction of the circuit court. Further, it was error for MERC to conclude that the county had refused to bargain. Those findings are reversed. In so holding, we do not alter the conclusion that Sharon Mormon Parrish is entitled to arbitration of her grievance based upon her claim that there was no just cause for her discharge.

Affirmed in part and reversed in part.